UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO.: 17cr10305 |
| v. | Violations: |
| JOSEPH BAPTISTE | Conspiracy (18 U.S.C. § 371) |
| Defendant. | Travel Act (18 U.S.C. § 1952) |
| | Aiding and Abetting (18 U.S.C. § 2) |
| | Money Laundering Conspiracy (18 U.S.C. § 1956(h)) |
| | Travel Act Forfeiture Allegation (18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461(c)) |
| | Money Laundering Forfeiture Allegation (18 U.S.C. § 982(a)(1)) |

## INDICTMENT

The Grand Jury charges that:

### General Allegations

At all times relevant to this Indictment:

### Certain Relevant Persons and Entities

1.      Defendant JOSEPH BAPTISTE was a United States citizen and was therefore a "domestic concern" under the Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. § 78dd-2(h)(1)(A). BAPTISTE was a retired United States Army Colonel and a dentist. In addition

BAPTISTE was the president of "Non-Profit" and a member of the board of directors of "Company," both of which are described in greater detail below.

2. "Non-Profit," a purported non-profit organization with the stated mission of helping the impoverished in the Republic of Haiti, was headquartered in Maryland and was therefore a "domestic concern" under the FCPA, 15 U.S.C. § 78dd-2(h)(1)(B). Non-Profit had tax exempt status under Section 501(c)(3) of the Internal Revenue Code.

3. "Company," a limited liability company established to promote projects for the reconstruction of Haiti, was organized under the laws of Delaware, and was therefore a "domestic concern" under the FCPA, 15 U.S.C. § 78dd-2(h)(1)(B). One of Company's objectives was to promote a port development project (the "Port Project") involving the commercial development of an area in Haiti known as Moles Saint Nicolas.

4. Co-Conspirator #1 ("CC-1"), a United States citizen, was the Chairman and Chief Executive Officer of Company. CC-1 was therefore a "domestic concern" and an officer, director, employee, and agent of a "domestic concern." 15 U.S.C. § 78dd-2(h)(1)(A) and (B).

5. "Foreign Official-1" was a high-level elected official in the government of the Republic of Haiti. Foreign Official-1 was a "foreign official" as that term is defined in the FCPA, 15 U.S.C. § 78dd-2(h)(2)(A).

6. "Aide-1" was an aide to Foreign Official-1, and was a trained engineer. Aide-1 was a "foreign official" as that term is defined in the FCPA, 15 U.S.C. § 78dd-2(h)(2)(A).

7. "Aide-2" was an aide to Foreign Official-1. Aide-2 was a "foreign official" as that term is defined in the FCPA, 15 U.S.C. § 78dd-2(h)(2)(A).

8. "Lawyer-1" was a lawyer who worked within Foreign Official-1's office. Lawyer-1 was a "foreign official" as that term is defined in the FCPA, 15 U.S.C. § 78dd-2(h)(2)(A).

### General Allegations Regarding the Conspiracy to Violate The FCPA and the Travel Act Charged in Count One

9. From in or about November 2014 through in or about December 2015, BAPTISTE, together with CC-1 and others known and unknown to the Grand Jury, conspired to bribe foreign officials to obtain and retain business in connection with the Port Project. As part of the conspiracy, BAPTISTE, CC-1 and others known and unknown to the Grand Jury solicited bribes from two undercover agents from the FBI posing as a prospective investors for the Port Project ("UC-1" and "UC-2"), which was expected to cost approximately $84 million, and was to involve the construction of a cement factory in its first phase. BAPTISTE told the UCs that he would funnel the payments to Haitian officials through Non-Profit in order to secure government approval of the project. UC-2 ultimately wired $50,000 to Non-Profit's bank account at BAPTISTE's direction. Although BAPTISTE used the $50,000 for personal uses, he intend to use future payments from UC-2 to make bribe payments in connection with the Port Project.

### Objects of the Conspiracy

10. The purpose and object of the conspiracy charged in Count One was to enrich the co-conspirators, including BAPTISTE, by paying bribes to Haitian officials in order to obtain and retain business for BAPTISTE, CC-1, Company, Non-Profit, and others in connection with the Port Project.

### Manner and Means

11. The manner and means by which the defendant, BAPTISTE, together with CC-1 and others known and unknown to the Grand Jury, accomplished the objects of the conspiracy to

3

violate the FCPA and the Travel Act charged in Count One included, among other things, the following:

 a. BAPTISTE traveled from Maryland to Boston, Massachusetts, and CC-1 traveled from outside the United States to Boston, Massachusetts, to meet with and solicit potential investors for the Port Project and to discuss bribe payments that would have to be made in connection with the Port Project.

 b. BAPTISTE offered to use Non-Profit as a conduit for bribe payments from potential investors that needed to be made in connection with the Port Project, in order to conceal the true nature of the funds.

 c. BAPTISTE, CC-1, and others used telephones, text messages, and email to discuss bribe payments that needed to be made, and other things of value that needed to be provided, to foreign officials, including Foreign Official-1 and Aide-1, in connection with the Port Project.

 d. BAPTISTE provided UC-2 account and routing numbers for Non-Profit's bank account, so that UC-2 could wire money that BAPTISTE could purportedly use to pay bribes to foreign officials in connection with the Port Project.

 e. BAPTISTE provided UC-2 two letters that BAPTISTE personally signed, each of which falsely described separate $25,000 payments that UC-2 had provided to BAPTISTE to pay bribes via Non-Profit as a charitable, tax deductible donation to Non-Profit.

 f. BAPTISTE traveled to Haiti to meet with foreign officials, including Foreign Official-1, to promote, manage, and carry on the bribery scheme in connection with the Port Project.

g. BAPTISTE offered a job to Aide-1 in exchange for help in obtaining a letter from Foreign Official-1 indicating government support for the Port Project.

<u>Overt Acts Committed in Furtherance of the Conspiracy Charged in Count One</u>

12. In furtherance of the conspiracy charged in Count One, and to achieve the objects thereof, at least one of the co-conspirators committed or caused to be committed, in the District of Massachusetts and elsewhere, at least one of the following overt acts, among others:

13. On or about November 13, 2014, BAPTISTE flew from Baltimore-Washington International Airport in Maryland to Boston Logan International Airport in Massachusetts to attend a meeting on the same day at a Boston-area hotel with ("UC-1").

14. On or about November 13, 2014, BAPTISTE held a meeting with UC-1 at which he discussed a possible investment with UC-1 in the Port Project; confirmed to UC-1 that a "pay-to-play" system existed in Haiti; described bribe payments that would have to be made in connection with the Port Project, as well as how they could be made; and explained that he could use Non-Profit to conceal and facilitate bribe payments to the Haitian officials.

15. On or about August 13, 2015, BAPTISTE called UC-1 and discussed plans for an in-person meeting in Boston, Massachusetts to review details of the Port Project with CC-1.

16. On or about October 10, 2015, CC-1 sent an email to UC-1 to which he attached letters from Haitian officials, including a letter signed by Foreign Official-1's predecessor; those letters contained assurances that the Haitian government would support the Port Project.

17. On or about November 12, 2015, BAPTISTE flew from Baltimore-Washington International Airport in Maryland to Boston Logan International Airport in Massachusetts to attend a meeting at a Boston-area hotel on that same day to discuss the financial aspects of the Port Project, including bribes that would be paid in connection with the Port Project.

18.     On or about November 12, 2015, BAPTISTE and CC-1 met with UC-1 and a second undercover agent of the FBI ("UC-2"), who was introduced as UC-1's boss (collectively, "UCs").

19.     On or about November 12, 2015, at the meeting described in Paragraph 18 above, BAPTISTE and CC-1 spoke to the UCs about the Port Project and solicited the UCs to invest in a factory that would constitute the first phase of the project, with an estimated cost of approximately $84 million.

20.     On or about November 12, 2015, at the meeting described in Paragraph 18 above, BAPTISTE went to a suite at the hotel and had a one-on-one conversation with UC-2. During that conversation, BAPTISTE confirmed that bribes totaling approximately 5% of the cost of the factory would need to be paid to Haitian officials, including Foreign Official-1 and other high-level officials within the Haitian government. BAPTISTE told UC-2 that he would conceal and facilitate the bribe payments by using Non-Profit as a conduit for the bribe payments.

21.     On or about November 16, 2015, BAPTISTE told UC-2 that he was traveling to Haiti specifically in connection with the Port Project, and that he was going to meet with Foreign Official-1 to obtain an updated letter of support. When UC-2 asked BAPTISTE if BAPTISTE needed anything from UC-2, BAPTISTE responded that UC-2 needed to wire him money as soon as possible.

22.     Thereafter, on or about November 16, 2015, BAPTISTE sent UC-2 an email containing the account and routing numbers for Non-Profit's bank account, so that UC-2 could wire money to BAPTISTE that he could use to pay bribes to obtain an updated letter of support from Foreign Official-1.

23. On or about November 20, 2015, after UC-2 had wired $25,000 to Non-Profit's bank account per BAPTISTE's instructions, BAPTISTE sent UC-2, via text message and via email, pictures of himself meeting with Foreign Official-1.

24. On or about November 25, 2015, BAPTISTE called CC-1 and told him that he had spoken to Aide-1. BAPTISTE inquired whether it was prudent to suggest to Aide-1 that Aide-1 would also be compensated if Foreign Official-1 authorized the Port Project. CC-1 agreed that this was a good idea.

25. On or about November 25, 2015, BAPTISTE called Aide-1 and said that BAPTISTE and CC-1 had talked about making Aide-1 an engineer on the Port Project if Aide-1 could help obtain Foreign Official-1's authorization for the project.

26. On or about the evening of December 3, 2015, UC-2 spoke to BAPTISTE by phone. BAPTISTE told UC-2 that he had used the $25,000 to pay, in cash, Aide-1, Aide-2, and Lawyer-1. BAPTISTE said that these payments amounted to only half of what BAPTISTE had promised the staffers for their efforts. BAPTISTE requested that UC-2 send him another $25,000 to complete the payments. BAPTISTE also stated that he told Foreign Official-1 that he was going to put Foreign Official-1 on the "payroll" and hire him as an advisor for the Port Project after Foreign Official-1 left office.

27. On or about December 4, 2015, BAPTISTE sent an email to UC-2 attaching a letter that falsely described the $25,000 payment previously provided by UC-2 as a charitable, tax deductible donation to Non-Profit.

28. On or about December 8, 2015, BAPTISTE told UC-2 during a telephone call that he had obtained an updated letter of support from Foreign Official-1 in exchange for bribes that BAPTISTE had paid.

29.     On or about December 9, 2015, CC-1 emailed to UC-2 the updated letter of support, which was dated December 4, 2015 and signed by Foreign Official-1.

30.     On or about December 10, 2015, after UC-2 had wired an additional $25,000 to Non-Profit's bank account, BAPTISTE sent UC-2 by email another letter from Non-Profit falsely describing the second $25,000 payment as a charitable, tax deductible donation.

## COUNT ONE
(Conspiracy to Commit Offenses Against the United States)

31. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 30 of this Indictment and further charges that:

32. In or about and between November 2014 and December 2015, in the District of Massachusetts and elsewhere, the defendant,

JOSEPH BAPTISTE,

a United States citizen, together with CC-1 and others known and unknown to the Grand Jury, conspired to commit offenses against the United States, to wit:

    a. to travel in interstate and foreign commerce, and use the mail and any facility in interstate and foreign commerce, with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, namely, violations of the anti-bribery provisions of the FCPA, Title 15, United States Code, Sections 78dd-2, and thereafter to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of the above described unlawful activity, contrary to Title 18, United States Code, Section 1952(a)(3); and

    b. being a domestic concern and an officer, director, employee, and agent of a domestic concern, to make use of the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official and to a person, while knowing that all and a portion of such money and thing of value would be offered, given, and promised, directly and indirectly, to a foreign

9

official, for purposes of: (A) (i) influencing acts and decisions of such foreign official in his or her official capacities; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duties of such official; and (iii) securing any improper advantage; and (B) inducing such foreign official to use his or her influence with a foreign government and instrumentalities thereof to affect and influence acts and decisions of such government and instrumentalities, in order to assist BAPTISTE, CC-1, Company, and Non-Profit in obtaining and retaining business for and with, and directing business to, BAPTISTE, CC-1, Company, Non-Profit, and others, contrary to Title 15, United States Code, Section 78dd-2(a)(3).

33. The objectives, manner and means, and overt acts taken in furtherance of the conspiracy charged herein are set forth in paragraphs 10 through 30.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
(Travel Act)

34. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 30 of this Indictment and further charges that:

35. In or about and between November 2014 and December 2015, in the District of Massachusetts and elsewhere, the defendant,

JOSEPH BAPTISTE,

did travel in interstate and foreign commerce, and use the mail and any facility in interstate and foreign commerce, with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, namely, violations of the anti-bribery provisions of the FCPA, Title 15, United States Code, Sections 78dd-2, and thereafter performed and attempted to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of the above described unlawful activity, to wit: traveling from Maryland to Boston to meet with UC-2 and thereafter traveling to Haiti to meet with, and then meeting with, foreign officials, including Foreign Official-1, providing bank account information for Non-Profit to UC-2 so that UC-2 could wire funds that BAPTISTE could use to secure the letter from Foreign Official-1, and sending UC-2 letters from Non-Profit stating that the funds provided by UC-2 were tax-deductible, charitable contributions in order to conceal the true nature of the funds.

All in violation of Title 18, United States Code, Section 1952(a)(3)(A) and Title 18 United States Code, Section 2.

## COUNT THREE
## (Money Laundering Conspiracy)

36. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 30 of this Indictment and further charges that:

37. In or about November 2014 though in or about December 2015, in the District of Massachusetts and elsewhere, the defendant,

## JOSEPH BAPTISTE,

did conspire with CC-1 and others known and unknown to the Grand Jury to commit offenses under Title 18, United States Code, Section 1956, namely:

a. To transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, namely, bribery of a foreign official, a felony violation of the FCPA, Title 15, United States Code, Section 78dd-2, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

b. To conduct and attempt to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, and property used to conduct and facilitate specified unlawful activity, namely, bribery of a foreign official, a felony violation of the FCPA, Title 15 United States Code, Section 78dd-2, with the intent (A) to promote the carrying on of specified unlawful activity, and (B) to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, in violation of Title 18 United States Code, Section 1956(a)(3)(A) and (B).

All in violation of Title 18, United States Code, Sections 1956(h).

## TRAVEL ACT FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461(c))

38. Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1952, set forth in Counts One and Two of this Indictment,

JOSEPH BAPTISTE,

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such offense.

39. If any of the property described in Paragraph 38 above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 38 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

## MONEY LAUNDERING FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(1))

40. Upon conviction of the offense in violation of Title 18, United States Code, Section 1956(h), set forth in Count Three of this Indictment,

JOSEPH BAPTISTE,

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property.

41. If any of the property described in Paragraph 40, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 40 above.

All pursuant to Title 18, United States Code, Section 982(a)(1).

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY

_____
KEVIN R. GINGRAS
TRIAL ATTORNEY
U.S. DEPARTMENT OF JUSTICE

_____
STEPHEN E. FRANK
ASSISTANT U.S. ATTORNEY
DISTRICT OF MASSACHUSETTS

_____  10/4/17
DEPUTY CLERK
District of Massachusetts            1:50p

15