UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| | * |
| v. | * |
| | * |
| JOSEPH BAPTISTE and | *   Criminal Action No. 17-cr-10305-ADB |
| ROGER RICHARD BONCY, | * |
| | * |
| Defendants. | * |
| | * |

**MEMORANDUM AND ORDER ON DEFENDANT BAPTISTE'S MOTION TO SUPPRESS**

BURROUGHS, D.J.

On October 30, 2018, a grand jury returned a superseding indictment against Joseph Baptiste and Richard Roger Boncy charging them with conspiring to violate the Travel Act and the Foreign Corrupt Practices Act, conspiring to commit money laundering, and a violation of the Travel Act based on their efforts to bribe Haitian officials to promote a port development project in Môle Saint Nicolas, Haiti. [ECF No. 74 ("Superseding Indictment" or "SI")]. Defendants Baptiste and Boncy are scheduled to be tried together beginning June 10, 2019. [ECF No. 136]. Currently pending before the Court is Mr. Baptiste's motion to suppress his statements to FBI agents during a December 29, 2015 interview. [ECF No. 124]. For the reasons set forth below, the motion to suppress [ECF No. 124] is DENIED.

I.    BACKGROUND

The following facts are drawn from an affidavit submitted by Mr. Baptiste and affidavits submitted by the FBI Special Agents, Alison Pauly and Garrett Trombly ("Special Agents"), who interviewed Mr. Baptiste. [SI; ECF Nos. 130-1, 130-2, 138].

On December 29, 2015, Mr. Baptiste traveled to Miami for dinner and a business meeting with an individual he identifies as "the SEW chairman." [ECF No. 138 ("Baptiste Aff.") ¶ 2]. After dinner, the SEW chairman invited Mr. Baptiste to his hotel room at the Hilton Miami Downtown to continue their dinner conversation. [Id. ¶ 3; ECF No. 130-1 ("Pauly Aff.") ¶ 2; ECF No. 130-2 ("Trombly Aff.") ¶ 2]. Unbeknownst to Mr. Baptiste, the SEW chairman was an undercover FBI agent. [Pauly Aff. ¶ 3; Trombly Aff. ¶ 3].

In the SEW chairman's hotel room, Mr. Baptiste was looking out of the window when he heard a knock on the door and turned around to see the Special Agents enter the room. [Baptiste Aff. ¶ 5; Pauly Aff. ¶ 3; Trombly Aff. ¶ 3]. At this time, the undercover agent left and did not return to the room during the interview. [Pauly Aff. ¶ 3; Trombly Aff. ¶ 3]; see also [Baptiste Aff. ¶ 6].

The Special Agents identified themselves as FBI agents investigating corruption in Haiti. [Baptiste Aff. ¶ 5; Pauly Aff. ¶ 4; Trombly Aff. ¶ 4]. Special Agent Trombly recalled that he and Special Agent Pauly told Mr. Baptiste "that he was free to leave at any time." [Trombly Aff. ¶ 4]. Mr. Baptiste recollected that one of the Special Agents "pointed to the couch" where they wanted him to sit. [Baptiste Aff. ¶ 6]. Mr. Baptiste sat down on the couch; his back was to the window and the Special Agents sat across from him with their backs toward the door. [Id.]. Mr. Baptiste "fe[lt] trapped" in this seating configuration. [Id.].

The Special Agents interviewed Mr. Baptiste for three to four hours. [Id. ¶ 7]. Mr. Baptiste "did not feel that [he] was free to leave." [Id. ¶ 12]. The Special Agents remembered Mr. Baptiste as "friendly" and "cooperative" and recalled themselves maintaining a "courteous" tone throughout the "calm" interview. [Pauly Aff. ¶¶ 4, 6; Trombly Aff. ¶ 5]. Mr. Baptiste was cold and tired during the interview. [Baptiste Aff. ¶ 9]. During the interview, Mr. Baptiste asked

the Special Agents if he needed a lawyer. [Id. ¶ 8]. The Special Agents told him that they could not provide legal advice. [Id.]. Neither of the Special Agents could recall whether Mr. Baptiste asked them if he needed an attorney. [Pauly Aff. ¶ 5; Trombly Aff. ¶ 6]. The Special Agents stated that their standard response to a witness asking if he or she needs an attorney is to say that they cannot answer the question. [Pauly Aff. ¶ 5; Trombly Aff. ¶ 6].

During the interview, one of the Special Agents asked Mr. Baptiste to call a business associate. [Baptiste Aff. ¶ 10; Pauly Aff. ¶ 7; Trombly Aff. ¶ 7]. Mr. Baptiste complied. [Baptiste Aff. ¶ 10; Pauly Aff. ¶ 7; Trombly Aff. ¶ 7]. The Special Agents also asked Mr. Baptiste to surrender his phone and showed him a search warrant for the phone. [Baptiste Aff. ¶ 11]. Although Mr. Baptiste states that he "voluntarily provided" his phone to the Special Agents, he asserts that he "fe[els] that [he] would have been arrested" for not complying with their request. [Id.]. Mr. Baptiste left the hotel room when the interview concluded. [Pauly Aff. ¶ 8; Trombly Aff. ¶ 8].

On April 18, 2019, Mr. Baptiste filed a motion to suppress the statements he made to the Special Agents on December 29, 2015 claiming that the statements were taken in violation of his rights under the Fifth and Sixth Amendments to the U.S. Constitution. [ECF No. 124]. The Government opposed the motion to suppress on May 2, 2019. [ECF No. 130]. At a pretrial hearing on May 8, 2019, the Court gave Mr. Baptiste leave to prepare and file an affidavit in support of his motion to suppress. [ECF No. 137]. On May 13, 2019, Mr. Baptiste submitted an affidavit describing the circumstances under which he made the statements that he now seeks to suppress. [Baptiste Aff.].

## II.     DISCUSSION

Under Miranda v. Arizona, 384 U.S. 436 (1966), statements obtained in a custodial interrogation are generally inadmissible unless law enforcement has observed the applicable procedural safeguards including warning the suspect "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 U.S. 436, 444 (1966).  The procedural safeguards outlined by Miranda are only required during a "custodial interrogation," Rhode Island v. Innis, 446 U.S. 291, 300 (1980), which the Supreme Court has defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way," Miranda, 384 U.S. at 444.

To determine whether an individual is in custody for the purposes of Miranda in situations in which there has not been an arrest, "district court[s] look[] to the totality of the circumstances surrounding the questioning and determine[] whether a 'reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave.'" United States v. Arroyo, 972 F. Supp. 2d 112, 121 (D. Mass. 2013) (quoting United States v. Mittel-Carey, 493 F.3d 36, 39 (1st Cir. 2007)).  The First Circuit has identified four factors to be considered in this analysis: "whether the suspect was questioned in familiar or at least neutral surroundings, the number of law enforcement officers present at the scene, the degree of physical restraint placed upon the suspect, and the duration and character of the interrogation." United States v. Swan, 842 F.3d 28, 31 (1st Cir. 2016) (quoting United States v. Masse, 816 F.2d 805, 809 (1st Cir. 1987)).  The degree of physical restraint involved is given the most weight.  United States v. Davis, 773 F.3d 334, 340 (1st Cir. 2014) (citing Mittel-Carey, 493 F.3d at 40).

Here, Mr. Baptiste moves to suppress statements made to FBI agents during a three- to four-hour interview in a hotel room and argues that the setting was custodial because he did not feel free to leave and because the interview "had the characteristics of an interrogation by law enforcement equivalent to an interrogation at a police station." [ECF No. 124 at 4–5]. The Government opposes the motion and contends that that the setting was not custodial. [ECF No. 130 at 4].

The totality of circumstances surrounding the interview demonstrates that the Special Agents' interview of Mr. Baptiste did not occur in a custodial setting. First, Mr. Baptiste was questioned in a hotel room belonging to a business associate known to Mr. Baptiste as "the SEW chairman." [Baptiste Aff. ¶¶ 3, 5]. Although this location may have been unfamiliar to Mr. Baptiste and would not have been as neutral as a public location like a street, it is more neutral than other settings such as jail interrogation rooms, where law enforcement officers are "in a position to dominate." See United States v. Chavez, No. 06-cr-10127-JLT, 2008 WL 941776, at *2 (D. Mass. Apr. 3, 2008) (quoting United States v. Jones, 187 F.3d 210, 218 (1st Cir. 1999)). Second, there were only two law enforcement officers present at the scene, which, though they outnumbered Mr. Baptiste, did not overwhelm him. See [Pauly Aff. ¶ 3; Trombly Aff. ¶ 3]; see, e.g., United States v. Campbell, 741 F.3d 251, 267–68 (1st Cir. 2013) (citing United States v. Crooker, 688 F.3d 1, 12 (1st Cir. 2012)) (finding no custodial setting where each defendant present was questioned by at most two police officers). Third, Mr. Baptiste was never physically restrained and left the hotel room when the interview concluded. See [Pauly Aff. ¶ 8; Trombly Aff. ¶ 8]; Crooker, 688 F.3d at 12 (finding no custody where suspect was "never physically restrained" and left the property after he was questioned). Fourth, although the interview was somewhat lengthy and occurred late at night, the Special Agents maintained a "courteous" tone

5

and were "calm" throughout the duration of the interview.  See [Baptiste Aff. ¶¶ 3, 7; Pauly Aff. ¶ 6; Trombly Aff. ¶ 6]; United States v. Beverly, 993 F.2d 1531 (1st Cir. 1993) (Table) (finding no custodial setting where questioning lasted three hours and there was "no evidence that the questions were coercive in nature, or that the agents were overbearing in manner").  Given the characteristics of the interview as well as the fact that no physical restraints were used, a reasonable person in Mr. Baptiste's circumstances likely would have felt that he was at liberty to terminate the interview and leave the hotel room.  Accordingly, the interview of Mr. Baptiste did not occur in a custodial setting, and the rights conferred by Miranda did not attach.[1]

## III.   CONCLUSION

For the reasons stated herein, Defendant Baptiste's motion to suppress [ECF No. 124] is DENIED.

**SO ORDERED.**

May 31, 2019                                                        /s/ Allison D. Burroughs
                                                                             ALLISON D. BURROUGHS
                                                                             U.S. DISTRICT JUDGE

---

[1] As an alternative ground, Mr. Baptiste urges the Court to suppress the statements at issue on the basis that he invoked his right to consult an attorney during the questioning.  See [ECF No. 124 at 3–4]. Mr. Baptiste recalled asking the Special Agents "if [he] needed a lawyer." [Baptiste Aff. ¶ 8]. "Invocation of the Miranda right to counsel requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." Davis v. United States, 512 U.S. 452, 459 (1994) (internal quotation marks omitted). "[A]mbiguous or equivocal" statements from which the questioning law enforcement officer understands "only that the suspect might be invoking the right to counsel" are insufficient to invoke the right. Id.  Here, Defendant Baptiste's inquiry as to whether he needed a lawyer did not amount to an unequivocal invocation of the right to counsel, and therefore was insufficient to require questioning to cease.  See United States v. Sweeney, 887 F.3d 529, 536 (1st Cir. 2018) (concluding that defendant's response of "[d]o I need a lawyer?" when asked by law enforcement to clarify if he was requesting counsel after commenting that "he needed to speak to a lawyer to avoid 'dig[ging] a hole' for himself" was not an unambiguous request for counsel).