UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JOSEPH BAPTISTE and<br>ROGER RICHARD BONCY,<br><br>Defendants. | *<br>*<br>*<br>*<br>*   Criminal Action No. 17-cr-10305-ADB<br>*<br>*<br>*<br>*<br>* |

**MEMORANDUM AND ORDER ON DEFENDANTS'
MOTIONS FOR JUDGMENT OF ACQUITTAL AND FOR A NEW TRIAL**

BURROUGHS, D.J.

On October 30, 2018, a grand jury returned a superseding indictment against Joseph Baptiste and Roger Richard Boncy charging them with conspiring to violate the Travel Act and the Foreign Corrupt Practices Act ("FCPA"), conspiring to commit money laundering, and violating the Travel Act based on their efforts to bribe Haitian officials to promote a port development project in Môle Saint Nicolas, Haiti. [ECF No. 74]. After an eight-day trial, on June 20, 2019, a jury convicted Defendants Baptiste and Boncy (collectively, "Defendants") of conspiring to violate the FCPA, 15 U.S.C. § 78dd-2, and the Travel Act, 18 U.S.C. § 1952. [ECF No. 199]. The jury also convicted Defendant Baptiste of a substantive violation of the Travel Act and conspiring to commit money laundering in violation of 18 U.S.C. § 1956(h). [Id.].

Currently pending before the Court is Defendant Baptiste's motion for a new trial on the basis of ineffective assistance of counsel. [ECF No. 234]. Also pending before the Court are Defendants' motions for judgment of acquittal, which were initially made following the close of the Government's evidence and were renewed following trial. [ECF Nos. 232, 242]. For the

following reasons, Defendant Baptiste's motion for a new trial, [ECF No. 234], is <u>GRANTED</u> and Defendant Boncy's motion for acquittal or, in the alternative, a new trial, [ECF No. 242], is <u>GRANTED</u> in part and <u>DENIED</u> in part.  Defendant Baptiste's motion for acquittal, [ECF No. 232], is <u>DENIED</u>.

**I.      BACKGROUND**

     **A.      Procedural Background**

On August 26, 2019, Defendant Baptiste filed motions for acquittal and a new trial, [ECF Nos. 232, 234], and Defendant Boncy filed a motion for acquittal or, in the alternative, a new trial, [ECF No. 242].  Defendant Baptiste's motion was supported by a five-page affidavit signed by Jason Hinton, [ECF No. 239-1 ("Hinton Affidavit")], who attended much of the trial and assisted trial counsel Donald LaRoche with aspects of the trial.  On September 30, 2019, the Government filed its opposition to Defendant Baptiste's motion for acquittal and Defendant Boncy's motion.  [ECF Nos. 248, 249].  On October 2, 2019, the Government filed its opposition to Defendant Baptiste's motion for a new trial.  [ECF No. 251].  Defendant Boncy filed a reply brief on October 25, 2019.  [ECF No. 254].

On November 6, 2019, the Court noticed an evidentiary hearing for November 13, 2019 on Defendant Baptiste's motion for a new trial.  [ECF No. 258].  The Court continued the evidentiary hearing due to a scheduling conflict for LaRoche, who was expected to testify, and to have time to resolve discovery disputes between the parties.  [ECF No. 259 ¶¶ 4, 6; ECF Nos. 258, 260].  On November 13, 2019, the Court held a status conference to discuss potential waiver of attorney-client privilege in connection with Defendant Baptiste's motion and the upcoming evidentiary hearing.  [ECF No. 262].  The Government later filed a motion for clarification of the Court's November 13, 2019 rulings at the status conference, [ECF No. 266], and Defendant

Baptiste opposed the motion, [ECF No. 269]. On December 16, 2019, the Court held a hearing on the privilege issue and stated that it would not find that Baptiste had entirely waived attorney-client privilege based solely on his raising an ineffective assistance of counsel claim. [12/16/19 Tr. at 4:12–18]. Instead, the Court determined that it would review and make determinations about waiver based on responses from witnesses at the evidentiary hearing. [Id. at 38:9–14, 39:8–13].

The evidentiary hearing was held over the course of two days, January 14, 2020 and February 5, 2020. [ECF Nos. 278, 285]. Trial counsel LaRoche testified on January 14, 2020. [ECF No. 278]. Husband and wife Jason and Arielle Hinton, who are friends of Defendant Baptiste and attorneys practicing in the State of Maryland, testified on February 5, 2020. [ECF No. 285]. All parties had an opportunity to fully cross-examine witnesses.

## II. LEGAL STANDARD

### A. Rule 29 Standard

To prevail on a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, a defendant must "show that the evidence presented at trial, even when viewed in the light most favorable to the government, did not suffice to prove the elements of the offenses beyond a reasonable doubt." United States v. Acevedo, 882 F.3d 251, 257 (1st Cir. 2018) (citing United States v. Gabriele, 63 F.3d 61, 67 (1st Cir. 1995)). The Court does not "weigh the evidence or make any credibility judgments, as those are left to the jury." United States v. Merlino, 592 F.3d 22, 29 (1st Cir. 2010) (citing United States v. Ayala-Garcia, 574 F.3d 5, 11 (1st Cir. 2009)). Instead, the Court "resolve[s] all credibility disputes in the verdict's favor," id. (quoting United States v. Olbres, 61 F.3d 967, 970 (1st Cir. 1995)), and "examine[s] the evidence—direct and circumstantial—as well as all plausible inferences drawn therefrom, in the

light most favorable to the verdict," United States v. Meléndez-González, 892 F.3d 9, 17 (1st Cir. 2018) (internal quotations omitted).

> B.  **Rule 33 Standard**

On a motion for a new trial under Federal Rule of Criminal Procedure 33, "the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  "[T]he remedy of a new trial is sparingly used, and then only where there would be a miscarriage of justice and where the evidence preponderates heavily against the verdict."  Merlino, 592 F.3d at 32 (quoting United States v. Wilkerson, 251 F.3d 273, 278 (1st Cir. 2001)).  "The trial court may set aside a verdict and order a new trial if, in its opinion, the verdict is against the clear weight of the evidence, is based upon evidence that is false, or resulted from some trial error and amounts to a clear miscarriage of justice."  Payton v. Abbott Labs, 780 F.2d 147, 152 (1st Cir. 1985).  "[A] district court has greater latitude in considering a motion for a new trial than it does in considering a motion for acquittal . . . ."  Merlino, 592 F.3d at 33.

> C.  **Ineffective Assistance of Counsel Standard**

The Sixth Amendment guarantee of a "right to counsel is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process." Kimmelman v. Morrison, 477 U.S. 365, 374 (1986).  "[T]he right to counsel is the right to the effective assistance of counsel."  Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)).  "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman, 477 U.S. at 374.

When a defendant challenges his conviction on the basis of ineffective assistance of counsel, courts "first determine whether counsel's representation fell below an objective standard of reasonableness. Then [they] ask whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Hinton v. Alabama, 571 U.S. 263, 272 (2014) (internal quotation marks omitted) (quoting Padilla v. Kentucky, 559 U.S. 356, 366 (2010)). "A court may consider either prong first in the interest of efficiency." United States v. Sihai Cheng, 392 F. Supp. 3d 141, 153 (D. Mass. 2019) (citing Ortiz-Graulau v. United States, 756 F.3d 12, 17 (1st Cir. 2014)). "[F]ailure to satisfy one prong . . . obviates the need for a court to consider the remaining prong." Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010).

## III. DISCUSSION

### A. Baptiste's Motion for a New Trial

Defendant Baptiste seeks a new trial on the basis of ineffective assistance of counsel, citing nine errors made by trial counsel LaRoche: (1) failing to conduct an adequate investigation; (2) failing to review critical discovery; (3) failing to consult with potential experts; (4) misunderstanding the Court's pre-trial rulings concerning prosecution's evidence; (5) conducting self-defeating cross-examination or no cross-examination; (6) failing to object to improper lay opinion testimony; (7) failing to move for severance; (8) failing to request appropriate jury instructions; and (9) failing to present any coherent defense. [ECF No. 239]. The grounds supporting these allegations were detailed in the Hinton Affidavit. See [Hinton Affidavit]. The Government opposes the motion, arguing that LaRoche's performance was objectively reasonable and that, even if it was not, Defendant Baptiste cannot show a reasonable

probability that the result of the trial would have been different absent LaRoche's errors. [ECF No. 251].

                1.        Reasonableness of LaRoche's Performance

"To establish that counsel's performance was deficient, a defendant must show that it fell below an objective standard of reasonableness under the circumstances." Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2007) (citing Strickland, 466 U.S. at 687–88). This prong "is necessarily linked to the practice and expectations of the legal community: The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Hinton, 571 U.S. at 273 (internal quotation marks omitted) (quoting Padilla, 559 U.S. at 366). When reviewing an ineffective assistance of counsel claim, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Strickland, 466 U.S. at 689. "[A] reviewing court must not lean too heavily on hindsight: a lawyer's acts and omissions must be judged on the basis of what he knew, or should have known, at the time his tactical choices were made and implemented." Ouber v. Guarino, 293 F.3d 19, 25 (1st Cir. 2002) (citing Bell v. Cone, 535 U.S. 685, 698 (2002)). In addition, counsel's errors should be evaluated "in light of all the circumstances" and in the context of his or her "overall performance." Kimmelman, 477 U.S. at 381, 386.

At the evidentiary hearing on January 14, 2020, LaRoche acknowledged that Defendant Baptiste's trial was his "first actual full-blown trial." [1/14/20 Tr. at 26:5]. He was the only attorney of record for Defendant Baptiste, though Mr. Hinton sat at the defense table during several days of trial. [Id. at 27:13–15, 119:19–24; ECF No. 285 (Hinton testimony regarding presence at trial)]. Mr. and Mrs. Hinton[1] communicated with LaRoche and Defendant Baptiste

---

[1] Mrs. Hinton is a criminal trial attorney with the Maryland State's Attorney's Office. See [ECF No. 285].

6

prior to trial to discuss the case. [1/14/20 Tr. at 27:7–10, 28:18–20]. Mr. Hinton, however, is not a criminal trial attorney; he testified that he had no criminal experience and that his work with the Maryland State's Attorney's Office was limited to bond hearings. [ECF No. 285]. Mr. Hinton assisted LaRoche in drafting the opening statement and ultimately drafted the bulk of LaRoche's closing statement. [1/14/20 Tr. at 120:3–4; ECF No. 285 (Hinton testimony regarding assistance with opening and closing statements)]. LaRoche was otherwise responsible for engaging in discovery, investigation, and defense of Defendant Baptiste leading up to and throughout trial. The job of defending Defendant Baptiste was LaRoche's. Mr. Hinton began to take a more active role only because he lost confidence in LaRoche's abilities, including his ability to write competent opening and closing statements. [ECF No. 285].

LaRoche acknowledged that he was unable to open discovery produced by the Government, and this was supported by several e-mail communications in which he asked the Government to resend or assist in his efforts to open files. [1/14/20 Tr. at 30:1–11, 33:6–12]. LaRoche did not provide copies of documents or audio and video recordings to Defendant Baptiste, nor did they ever sit down together to review all of the materials that the Government had provided. [Id. at 31:9–32:15]. In fact, LaRoche said he could not state with certainty whether he ever reviewed all of the audio and video recordings the Government had provided, or whether he heard certain recordings for the first time at trial. [Id. at 34:12–13, 36:25–37:3]. The Government acknowledges that "[a]lmost all of the evidence against Baptiste" came from "video, . . . phone recordings and call transcripts" and Baptiste's own communications, and that "[t]he jury heard or reviewed transcripts from phone call after phone call" during trial. [ECF No. 251 at 5]. Many of these recordings were in Haitian Creole, which LaRoche understands. [1/14/20 Tr. at 34:7–11].

7

As for documents, LaRoche testified that he "had not had a chance to thoroughly review" certain documents. [1/14/20 Tr. at 37:4–16]. When the Government gave LaRoche a thumb drive with its proposed trial exhibits a month or less before trial, LaRoche testified that he had not seen some of the materials before. [Id. at 38:2–12, 47:6–11 ("Q. But to the extent if the government didn't identify it as an exhibit, had you been able to review it, listen to it previously? A. Not fully."), 47:25–48:4, 48:12–16 ("Q. And so is it fair—am I understanding correctly, if it wasn't included in the Government's immediate pretrial disclosures, you can't say for sure you managed to open it and review it? A. That would be fair to say.")]. The trial exhibits were, LaRoche conceded, a small subset of the discovery the Government had produced since 2017. [Id. at 48:5–16].

LaRoche admitted that he had not investigated sufficiently to understand the import of a photograph that he saw for the first time one week before trial and which he thought "was not as critical as the government was able to argue it in front of the jury." [1/14/20 Tr. at 37:4–16] see also [id. at 50:12–25]. He said he did not realize until "later on" that the photograph was taken from Defendant Baptiste's own phone, but had assumed instead that the photograph was not tied to Defendant Baptiste because he did not appear in the photograph. [Id. at 37:11–23]. The following exchange from a status conference that took place just before opening arguments on June 11, 2019, is instructive in light of LaRoche's recent admissions:

> MR. LaROCHE: "They said it was connected to a text message, but I haven't been able to find that specific text message . . . ."
>
> MS. RUBIN-SMITH: "Your Honor, this was all produced in discovery several times. . . . We also handed over a report from the undercover's phone, and that report showed text messages and photos received from Baptiste's phone. And that picture is also on that report. . . . it's been handed over at least three times in three different ways."

[6/11/19 Tr. at 4:25–6:8].

Although the Government provided LaRoche with transcripts of some of the audio and video recordings that were in Haitian Creole, LaRoche testified that the majority were not produced with transcripts and he did not have transcripts made. [1/14/20 Tr. at 39:2–8]. This is in spite of the fact that Mr. Hinton identified potential errors in one of the Government's translated transcripts. See [BAP000960 (email from Hinton to LaRoche, discussing potential inaccuracies)]. In at least one instance, LaRoche reviewed, for the first time and just weeks before trial, a transcript provided by the Government but did not listen to the actual recording until the Government presented it at trial. [1/14/20 Tr. at 39:25–40:17]. He confirmed that he did not talk to Defendant Baptiste about this particular recording or transcript at any time prior to this, despite the fact that the Government began producing materials to LaRoche in 2017. See [Id. at 44:8–16].

LaRoche did not subpoena any witnesses. [1/14/20 Tr. at 59:15–16]. Defendant Baptiste and Mr. Hinton provided him with a list of categories of potential witnesses that could testify on Defendant Baptiste's behalf at trial. [ECF No. 285 (Hinton testimony)]. LaRoche, however, testified that he only made contact with one of those potential witnesses, [1/14/20 Tr. at 59:17–24], and did not attempt to formulate his own list of potential witnesses in support of Defendant Baptiste's potential defenses against the charges, [id. at 52:14–19, 53:6–54:1, 57:24–58:4]. In addition, LaRoche testified that he did not attempt to identify or contact any expert witnesses that could have provided evidence on Haitian law or business practices. [Id. at 59:25–60:4].

Once trial began, LaRoche's lack of preparation impeded his ability to diligently defend his client. During his opening statement, which Mr. Hinton helped draft, LaRoche continued to pursue an entrapment defense although he testified at the hearing on the currently pending motions that others had previously told him that the defense was not available to Defendant

9

Baptiste on the facts of the case. [1/14/20 Tr. at 74:18–75:10, 98:1–14, 99:8–16]. As for his closing statement, both LaRoche and Mr. Hinton testified that Mr. Hinton drafted the statement the night before LaRoche was due to present it. [Id. at 119:10–18; ECF No. 285 (Hinton testimony)].

LaRoche only cross-examined two of the Government's six witnesses, none of whom LaRoche had contacted or sought to interview prior to trial. [ECF No. 239 at 23; ECF No. 251 at 20–21].[2] Instead, he allowed counsel for Defendant Boncy, Jared Dwyer, to conduct cross-examinations of the remaining witnesses and testified:

> [I]n my opinion there were instances where Mr. Dwyer was doing a great job in terms of what he was doing with the case, and I had some minimum conversation with Dr. Baptiste about that. And so I chose not to jump up and object under the impression, and basically what I was seeing, that Mr. Dwyer was already in that area, so I elected not to sort of beat the horse.

[1/14/20 Tr. at 116:13–25]. This was despite the fact that an aspect of Dwyer's trial strategy was to portray Defendant Baptiste as the primary driver of the alleged conspiracy. See, e.g., [6/12/19 Tr. at 6:7–9:5, 18:5–23:12 (eliciting testimony on Defendant Baptiste), 46:14–47:12, 48:12–19, 49:5–11 (eliciting testimony to distinguish roles of each Defendant)].

The errors, omissions, and general lack of diligence outlined above demonstrate that LaRoche failed to provide effective assistance to Defendant Baptiste. See Harrington v. Richter, 562 U.S. 86, 106 (2011) ("It can be assumed that in some cases counsel would be deemed ineffective for failing to consult or rely on experts . . . ."); Kimmelman, 477 U.S. at 384–85 ("[T]hat testing process generally will not function properly unless defense counsel has done some investigation into the prosecution's case and into various defense strategies . . . . Viewing counsel's failure to conduct any discovery from his perspective at the time he decided to forgo

---

[2] Defendant Baptiste notes that during cross-examination of Agents Anderson and Arlati, LaRoche elicited damaging testimony and cites this as further evidence of LaRoche's lack of preparation for trial. [ECF No. 239 at 24–27].

that stage of pretrial preparation . . . we find counsel's decision unreasonable, that is, contrary to prevailing professional norms."); United States v. Márquez-Pérez, 835 F.3d 153, 165 (1st Cir. 2016) ("[C]ounsel's neglecting to review the government's video evidence indicates deficient performance."); see also Fisher v. Gibson, 282 F.3d 1283, 1296 (10th Cir. 2002) ("A decision not to investigate cannot be deemed reasonable if it is uninformed. [Counsel's] decision not to undertake substantial pretrial investigation and instead to 'investigate' the case *during* the trial was not only uninformed, it was patently unreasonable." (internal citation omitted)).

The Court cannot conclude that LaRoche's failure to review discovery or otherwise investigate his client's defenses "might be considered sound trial strategy," nor did LaRoche claim that these failures were part of a strategy. See Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). While he was not required to perform all of the numerous steps available to him to prepare for trial, the fact that he performed so few and in such a cursory manner is undeniably deficient. LaRoche clearly was not making "strategic choices . . . after thorough investigation of law and facts . . . ." Id. at 690. His "complete lack of pre-trial preparation put[] at risk both the defendant's right to an 'ample opportunity to meet the case of the prosecution' and the reliability of the adversarial testing process." Kimmelman, 477 U.S. at 385 (quoting Strickland, 466 U.S. at 685).

It is evident from LaRoche's testimony and the testimony and evidence presented at the evidentiary hearing that LaRoche's "overall performance" did not live up to "prevailing professional norms." See Kimmelman, 477 U.S. at 386; Hinton, 571 U.S. at 273. This conclusion is reinforced by the Court's own observations of LaRoche's trial performance. The Court therefore finds that LaRoche's performance as Defendant Baptiste's counsel "fell below an objective standard of reasonableness under the circumstances." Sleeper, 510 F.3d at 38.

       2.       Prejudice to Defendant Baptiste

Where deficient performance is established, a defendant must also "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . ." Strickland, 466 U.S. at 694.  This inquiry is focused on "the fundamental fairness of the proceeding." Id. at 696.  "[I]t is not enough for [a defendant] 'to show that the errors had some conceivable effect on the outcome,' but he is also not required to 'prove that the errors were more likely than not to have affected the verdict.'" Rivera v. Thompson, 879 F.3d 7, 12 (1st Cir. 2018) (quoting González-Soberal v. United States, 244 F.3d 273, 278 (1st Cir. 2001)).  Rather, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.  In assessing prejudice, courts "must consider the totality of the evidence before the judge or jury." Id. at 695.

"Strickland clearly allows the court to consider the cumulative effect of counsel's errors in determining whether a defendant was prejudiced." Dugas v. Coplan, 428 F.3d 317, 335 (1st Cir. 2005) (quoting Kubat v. Thieret, 867 F.2d 351, 370 (7th Cir. 1989)); see also Rossetti v. United States, 773 F.3d 322, 331 (1st Cir. 2014) (discussing the cumulative effect of errors related to ineffective assistance); Green v. Kenneway, 390 F. Supp. 3d 275, 298 (D. Mass. 2019) (citing United States v. Sepulveda, 15 F.3d 1161, 1196 (1st Cir. 1993)) (discussing potential for cumulative impact of errors related to ineffective assistance).  In considering the cumulative effect of errors, the First Circuit has held that "[i]ndividual errors, insufficient in themselves to necessitate a new trial, may in the aggregate have a more debilitating effect." United States v. Delgado-Marrero, 744 F.3d 167, 210 (1st Cir. 2014) (quoting Sepulveda, 15 F.3d at 1195–96 (alteration in original)).

The Court finds that LaRoche's failure to meaningfully review discovery produced by the Government until the days leading to trial was prejudicial to Defendant Baptiste in that it significantly impeded LaRoche's ability to prepare for trial. In addition, while certain errors identified supra may not have been prejudicial in isolation, the cumulative effect of LaRoche's failure to meaningfully review discovery in combination with the other errors identified herein raises a "reasonable probability" that Defendant Baptiste was prejudiced by the deficiency. See Strickland, 466 U.S. at 694.

For example, by failing to review the discovery provided by the Government—in the form of documents, audio and video recordings, and transcripts of those recordings—prior to trial, LaRoche potentially failed to identify exculpatory material or material that would have supported any potential defenses. Reviewing these materials ahead of trial would also have assisted LaRoche by informing him as to the Government's strongest evidence against his client, allowing him to prepare to discuss the evidence at trial. Further, if he had identified or interviewed potential witnesses or interviewed the Government's witnesses, or if he had identified and retained experts to testify to Haitian law or business practices, he might have presented a colorable defense for his client. Such a defense would include effective cross-examination of the Government's witnesses. Lastly, had LaRoche hired a translator to translate the audio and video recordings that were so central to the Government's case, he might have been able to challenge any potential mistranslations or words capable of multiple meanings in either English or Haitian.

Accordingly, because Defendant Baptiste has demonstrated that LaRoche's conduct fell below an objective standard of reasonableness and that, taken cumulatively, LaRoche's errors prejudiced him to such a degree that his conduct has "undermine[d] confidence in the outcome"

of his trial, Defendant Baptiste's motion for a new trial, [ECF No. 234], is GRANTED.  See Strickland, 466 U.S. at 694.

### B. Boncy's Motion for a New Trial

Defendant Boncy seeks a new trial as a result of prejudice he experienced due to LaRoche's ineffective assistance to Defendant Baptiste. [ECF No. 242 at 24].  Specifically, Boncy seeks a new, separate trial as to Count I.  [Id.].  Defendant Boncy notes that he was required to cross examine the majority of the Government's witnesses, [ECF No. 254 at 10], and the Government acknowledges that counsel for Boncy "effectively led the defense side of the case" after the first witness.  [ECF No. 249 at 19].

The Court also orders a new trial for Defendant Boncy.  In the Court's view, a new trial is warranted as to Defendant Boncy because LaRoche's deficient representation resulted in Defendant Boncy's counsel having to play an outsized role at trial rather than pursue his preferred defense strategy for his own client.  As examples, LaRoche acknowledged that he "lean[ed] on [Dwyer's] objections" because he "didn't want to fumble through it and make matters worse."  [1/14/20 Tr. at 67:24–25, 68:12–15].  Yet LaRoche also acknowledged that he and Dwyer did not "coordinate" their defense strategy or see "eye to eye" because "Dwyer had his direction and I had mine in terms of how we were proceeding with the trial."  [Id. at 115:18–20, 117:16–18].  Given that Defendant Boncy played a different role in the charged conspiracy than Defendant Baptiste, his counsel might well have decided to say and do considerably less during trial to emphasize his client's more minor participation in the alleged conspiracy had he not had to carry the defense so much on his own.  Also, had LaRoche more competently defended Defendant Baptiste, then Dwyer might have been able to more fully develop a defense based on a failure to establish the meeting of the minds necessary to prove a conspiracy (i.e. one

14

defendant intended an FCPA violation while the other one intended to steal funds from the co-defendant or the undercover agents). In any event, it is the Court's view that Defendant Boncy's trial strategy was distorted as a result of LaRoche's ineffective representation.

With regard to severance, where the Government has charged a conspiracy and the Court has determined that severance is not warranted, Defendants Baptiste and Boncy should be re-tried together. Cf. United States v. Floyd, 740 F.3d 22, 36 (1st Cir. 2014) ("[T]he severance of coconspirators' trials 'will rarely, if ever, be required.'") (quoting United States v. Flores-Rivera, 56 F.3d 319, 325 (1st Cir. 1995))); United States v. Saunders, 553 F.3d 81, 85 (1st Cir. 2009) ("The preference for a joint trial is particularly strong where the charge is conspiracy."). Defendant Boncy's motion for new trial, [ECF No. 242], is thus GRANTED in part and DENIED in part.

### C.    Baptiste and Boncy's Motions for Acquittal

In light of LaRoche's performance, the Court cannot meaningfully undertake an analysis of the sufficiency of the evidence under Rule 29. See Acevedo, 882 F.3d at 257 (to prevail on a Rule 29 motion, a defendant must "show that the evidence presented at trial, even when viewed in the light most favorable to the government, did not suffice to prove the elements of the offenses beyond a reasonable doubt"). Defendants' motions for Acquittal, [ECF Nos. 232, 242], are therefore DENIED.

## IV.    CONCLUSION

Although the Supreme Court has identified principles that should guide district courts in their analysis of ineffective assistance of counsel claims, the Supreme Court has made clear that "the principles we have stated do not establish mechanical rules." Strickland, 466 U.S. at 696. "In every case the court should be concerned with whether, despite the strong presumption of

reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." Id.  This Court recognizes just such a breakdown in the assistance LaRoche provided to Defendant Baptiste.  Although the prejudice prong was a considerably closer call than the ineffectiveness prong of the analysis, the Court simply cannot conclude that Defendants received a fair trial.  Although the Court does not fault the Government in arguing against a new trial and recognizes the burden of a second trial, at the end of the day the Court finds that justice and fairness require that the new trial motions be granted.

Accordingly, Defendant Baptiste's motion for a new trial, [ECF No. 234], is GRANTED, Defendant Baptiste's motion for acquittal, [ECF No. 232], is DENIED, and Defendant Boncy's motion for acquittal or new trial, [ECF No. 242], is GRANTED in part and DENIED in part.  The Court will schedule a status conference with the parties to set a new trial date.

**SO ORDERED.**

March 11, 2020                                                          /s/ Allison D. Burroughs
                                                                        ALLISON D. BURROUGHS
                                                                        U.S. DISTRICT JUDGE